<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RENALDO CHAVIS, | : | Civil Action No.: 15-250 (MCA) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| PATRICK NOGAN, *et al.*, | : | |
| Respondents. | : | |

APPEARANCES:

Renaldo Chavis
Bayside State Prison
P.O. Box F1 4293
Route 47
Leesburg, NJ 08327
       Petitioner, *pro se*

Lucille M. Rosano
Essex County Prosecutor's Office
Essex County Veterans Courthouse
50 West Market St.
Newark, NJ 07102
       On behalf of Respondents.

**Arleo, United States District Judge**

## I.    INTRODUCTION

Petitioner Renaldo Chavis ("Petitioner") has filed a *pro se* Petition (ECF No. 7.) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained in this Opinion, the Court will deny the Petition and will also deny a certificate of appealability.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On December 6, 2002, a jury in New Jersey Superior Court, Essex County found Petitioner guilty on charges of second-degree reckless manslaughter, second-degree aggravated assault, and third-degree unlawful possession of a weapon. (ECF No. 7-5 at 2.) Petitioner was acquitted on the charges of murder, attempted murder, aggravated manslaughter, possession of a firearm with the purpose to use it against Terrell Germany and possession of a firearm with the purpose to use it against Moresse Germany. (ECF No. 7-32 at 38-39.) The charges stemmed from the shooting of two men, one of whom succumbed to his injuries shortly thereafter, outside of a nightclub in Irvington, New Jersey on March 25, 2001. At Petitioner's trial, the surviving victim as well as other patrons and employees of the nightclub testified about the events surrounding the shooting as well as the shooting itself. (ECF No. 7 at Exhibits 24-31.)

On January 10, 2003, the court entered a judgment of conviction ("JOC"), and Petitioner was sentenced to an aggregate 20-year term of imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, requiring Petitioner to serve 85% of the sentence without parole eligibility. (ECF No. 7-5 at 2.)

Petitioner appealed his conviction to the New Jersey Superior Court, Appellate Division. (ECF No. 7-7 at 168-69.) On October 15, 2004, the Appellate Division affirmed the conviction. (ECF No. 7-9 at 2-21.) Petitioner sought certification from the New Jersey Supreme Court, but his petition was denied on May 25, 2005. *State v. Chavis*, 183 N.J. 591 (2005).

Petitioner then filed a petition for post-conviction relief ("PCR") on July 8, 2005. (ECF No. 7-11.) The PCR Court denied relief on July 28, 2006, and Petitioner filed a late-notice of appeal on July 24, 2007. (ECF No. 7-12 and 7-15.) On July 19, 2011, the Appellate Division affirmed in part and remanded in part the PCR Court's decision. (ECF No. 7-17 at 26.)

2

The PCR court denied relief after holding an evidentiary hearing on July 8, 2011. (ECF No. 7-35, ECF No. 7-18.) Petitioner appealed on November 30, 2011. (ECF No. 7-19 at 3-4.) The Appellate Division granted Petitioner's motion to file as within time on January 12, 2012, but denied his motion for reconsideration. (ECF No. 7-19 at 6 and 7-22 at 2-12.) On October 9, 2014, the New Jersey Supreme Court denied Petitioner's petition for certification. *State v. Chavis*, 220 N.J. 39 (2014). Petitioner filed the instant petition for habeas relief under § 2254 on January 8, 2015. (ECF No. 1 at 17, 19.) Respondents filed their full Answer on September 11, 2015. (ECF No. 7.) Petitioner filed a traverse on February 11, 2016. (ECF No. 8.) The matter is fully briefed and ready for disposition.

## III. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). If a decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA necessarily apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of corrections by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*,

545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. 2254(b)(1)(A). To do so, a petitioner must "fairly present' all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d. Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d. Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3D 187, 196, 199 (3d Cir. 2007); see also *Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's]

claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV. ANALYSIS

The Petition raises six grounds for relief, five of which are ineffective assistance of trial and/or appellate counsel. For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant federal habeas relief.

### A. Ineffective Assistance of Counsel

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors deprived the defendant of a fair trial. *Id.*

Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Id.* at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.* The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381

(1986). Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the Strickland standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted). "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

> 1. Ground One: Ineffective Assistance of Trial Counsel for Failure to assert a Self-Defense Claim and Failure to Object to Trial Court's Exclusion of a Self-Defense Jury Instruction

Ground One of the Petition alleges that Petitioner was deprived of his Sixth Amendment right to effective counsel due to trial counsel's failure to pursue a theory of self-defense. Specifically, Petitioner claims that counsel should have presented the self-defense theory in

addition to the misidentification theory which he employed at trial. (ECF No. 1 at 36). Petitioner first raised this ineffectiveness claim before the Appellate Division on direct appeal.

Petitioner's claim is based on trial counsel's strategic decision not to pursue a self-defense theory as an alternative to the mistaken identity theory that he presented at trial and counsel's alleged failure to object to the trial court's omission of a self-defense jury instruction. He submits that "there was ample testimony elicited, which supported the defense of self-defense" at his trial. (ECF No. 1 at 24.) Petitioner then goes on to cite excerpts of trial testimony that support his misidentification defense but do very little to support a self-defense theory. (*Id.* at 25-36.) The only cited testimony that arguably would have supported a self-defense theory, is that of the surviving victim Moresse Germany, recounting the decedent Terrell Germany's statement that he would "take care of it", shortly before the shooting that took his life and left his brother injured. (*Id.* at 27.) Petitioner argues that this testimony demonstrated Terrell Germany's resolve to avenge his brother who was just punched by another man who was later identified as Petitioner.

On appeal, Petitioner argued that the trial evidence supported the affirmative defense of self-defense, particularly: (1) the surviving victim's testimony that he provided contradictory statements about whether he punched Petitioner back, (2) testimony that the Germany brothers both consumed alcohol and marijuana in the hours leading up to the altercation, (3) that Terrell Germany confronted Petitioner in response to his brother Moresse's provocation "to avenge the alleged assault by attacking appellant", (4) Terrell Germany's imposing size, standing at 5'9" and weighing 297 pounds[1], (5) Petitioner's having been "cornered" by the Germany brothers after Petitioner punched Moresse Germany. (ECF No. 7-7 at 58-59.)

---

[1] Respondent submits that the medical examiner testified at trial that Terrell Germany's weight immediately before his death was "significantly more" than his normal weight as a result of fluids used shortly after the shooting that expanded the volume of his body. (ECF No. 7 at 15.)

Respondents argue that the state court's denial of this claim was reasonable. (ECF No. 7 at 23.) Moreover, Respondents direct this Court's attention to the state court's reasoning that a self-defense claim would have been in direct conflict with Petitioner's trial defense theories of misidentification and sloppy police work. (*Id.* at 27.)

The Appellate Division disagreed with Petitioner's contention that trial counsel's strategy to not raise self-defense was deficient. It noted:

> The record on appeal contains conflicting testimony on the issue of whether defendant had been present at the time of the shooting. Thus, the defense strategy to highlight the State's alleged failure to prove defendant had been present was not ill-conceived. It follows that a choice not to request a self-defense charge would be in keeping with this strategy.

(ECF No. 7-9 at 16-17.)

Under New Jersey law, a "person may justifiably use force against another if he reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." *State v. Galicia*, 45 A.3d 310, 325 (N.J. 2012). Therefore, a defendant must have had "an actual, honest, reasonable belief in the necessity of using force." *Id.* (internal quotations omitted). The use of deadly force is not justifiable, "unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily injury and is not justifiable if the actor knows he can avoid the necessity of using it with complete safety by means of a retreat." *Id.* (internal quotations omitted).

In this case, the facts elicited at trial show that prior to the shooting, Petitioner, despite having just had a heated exchange with the Germany brothers, freely walked away from and back towards the victims. (ECF No. 7-24 at 64-65.) On direct examination, Moresse Germany testified:

> [Petitioner] came walking to me after he said that like he was going to shake my hand so I thought that it finished like as far as leaving everything alone but that's when he got between me and my brother

and he turned around and shot my brother. My brother fell face first
and he turned back to me and pointed the gun at me.

(*Id.*)

Petitioner appeared to not only be free to walk to and from the victims, but he also appeared to have given at least one of the victims the impression that the matter had been settled. Thus, under the circumstances, Petitioner could not have had a reasonable belief that his life was presently in such a danger that warranted use of deadly force. Giving the proper deference to the Appellate Division's determination that self-defense was not a realistic strategy under the circumstances, a finding which is fully supported by the relevant facts, this Court cannot find that counsel was unreasonable in choosing not to pursue a self-defense strategy here. Moreover, because a self-defense theory is insupportable under these facts, Petitioner suffered no prejudice as a result of counsel's strategic decision, and thus Petitioner cannot show that counsel was ineffective for that reason as well. The state courts denial of this claim was not an unreasonably application of *Strickland* nor was the denial based on an unreasonable determination of the facts.

Additionally, Petitioner asserts that counsel failed to object when the trial court excluded a self-defense jury instruction, thus prohibiting the jury from considering the self-defense theory in addition to the misidentification defense theory.

On direct appeal, the Appellate Division examined the trial testimony and counsel's strategy and explained that a self-defense jury instruction could have been detrimental to Petitioner's defense. (ECF No. 7-9 at 14.) The Appellate Division reasoned that defense counsel's strategy to highlight the possibility of Petitioner being misidentified as the perpetrator in the shooting was evident from trial testimony eliciting information such as Petitioner's regularly being

10

confused with another individual, Edwards, and testimony that Petitioner already left the club by the time of the shooting. (*Id.*)

A jury instruction is only proper when there is an evidentiary basis on which to premise the instruction. *See United States v. Wrensford*, 866 F.3d 76, 91 (3d Cir. 2017) (citing *Bishop v. Mazurkiewicz*, 634 F.2d 724, 725 (3d Cir. 1980)). As noted above, the evidence presented at trial did not warrant a jury instruction on self-defense. "[C]ounsel cannot be found ineffective for failing to raise a meritless claim." *Werts v. Vaughn*, 228 F.3D 178, 203 (3d Cir. 2000).

For these reasons, the state court denial of this claim was also not an unreasonable application of *Strickland*. The testimony of the surviving victim and the other eye-witnesses would have directly contradicted a theory of self-defense. As such, this claim is denied.

2.      Ground Two: Ineffective Assistance of Trial Counsel for Failure to Object on *Brady* Grounds

In Ground Two, Petitioner alleges that he was denied his Sixth Amendment right to counsel due to trial counsel's failure to raise a violation under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner now claims as he did in his PCR proceeding, that trial counsel failed to object to the prosecution's withholding of Moresse Germany's written statement that was provided shortly after the shooting to the investigating detective. (ECF No. 1 at 40.) Petitioner first raised this ineffectiveness claim during his PCR proceeding. As a result, the PCR Court determined that the claim was barred under NJ Rule 3:22-4 and did not meet any of the exceptions. (ECF No. 7-12 at 6.) Notwithstanding this, after conducting the proper analysis, the PCR Court deemed the claim unmeritorious. (*Id.* at 7-10.) This Court will consider the merits of this claim despite the procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (explaining that

"[j]udicial economy might counsel" bypassing a procedural-default question if the merits "were easily resolvable against the habeas petitioner")).

At trial, Germany provided testimony about his initial meetings with Detective Holmes, including the first meeting, where he was not able to speak to the detective as he was still recovering from his injuries. (ECF No. 7-24 at 71-72.)

Petitioner bases this claim on the following trial testimony from Moresse Germany:

Q: Now did there come a time thereafter while you were in the hospital that a detective came to see you?

A: Yes.

Q: Do you recall his name?

A: Dt. Holmes.

Q: And while you were at the hospital were you able to speak to him verbally?

A: No.

Q: You couldn't.

A: I had to write it down on a piece of paper, some paper.

Q: Did he come more than once to see you?

A: Yes.

Q: Did there come time when he was able to speak to you?

A: Yes.

Q: You were able to speak to him?

A: Yes.

Q: Did you remember if you looked at any photographs?

A: Yes.

Q: And where was that?

A: In the hospital.

Q: How were those photographs presented to you? By whom?

A: By Dt. Holmes. It was a little chart, I think it was like three people up top and three people down the bottom.

Q: Okay. And you said people. What kind of people were in it?

A: All men, all guys.

Q: What color?

A: Black guys, bald head.

Q: Okay. And can you tell the members of the jury how these photographs were shown to you? What you said if anything, what you did?

A: He just showed me them and asked me "Do you see the guy who shot you?" I said "Yeah." He told me to point him out and I pointed to the picture of Reynaldo Chavis.

Q: Did you do anything to the picture?

A: No, I just turned it over and signed it.

Q: Okay. What is the date on that you signed it?

A: 3/27/2001.

Q: Now, at some point were you released from the hospital?

A: Yes.

Q: And did you recall if you again spoke to the police?

A: Yes, once I got to my mom's house.

Q: Who was that?

A: Dt. Holmes.

Q: All right. At that time, were you able to (remainder of this line is illegible)

A: Yes.

Q: And did you say Dt. Holmes took a statement from you?

A: Yes.

Q: Was it in written form.

A: No, typed.

Q: Typed?

A: Typed.

Q: Now did Dt. Holmes tell to you what to say in that statement?

A: No.

Q: Did he promise you anything if you gave a statement?

A: No.

Q: After he took the statement, did you read it sir?

A: Yes.

Q: Were you able to read it.

A: Yes.

Q: I am going to show you S 23 for identification.

THE COURT: Do you recognize what this is.

Q: What is it?

A: The statement I took at my mom's house with Dt. Holmes.

Q: And how do you know it's your statement?

A: Because I corrected - - I put my initials by it.

Q: Did you sign the bottom?

A: Yes.

Q: You don't remember? Now, I just want to show you something in your statement. You gave this statement on what date, sir? Do you remember the date?

A: No.

Q; All right. Showing you the statement, does it refresh your recollection as to what you gave it?

A: Yes.

Q: What date?

A: April 25th.

(ECF No. 7-24 at 71-74 and 76-79.)

The testimony supports Respondents' submission, that the only written statement was that which Germany provided to the detective on April 25, 2001, a month after the shooting. As for Germany's first meeting with Detective Holmes, it appears that the photo array where Germany identified the Respondent's photograph and signed and dated the back, was the only document obtained. The record suggests that trial counsel's reason for not objecting on *Brady* grounds, is because it was clear that Moresse Germany did not provide a written statement prior to the one given on April 25th, which was entered into evidence.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment . . . " 373 U.S. at 87. To establish a *Brady* violation, a defendant must show that: (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) the omission of this evidence prejudiced the defendant. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Here, counsel's performance was not deficient for failing to compel the introduction of a non-existent piece of evidence. The PCR Court found that, "Petitioner has not made a prima facie showing that any such statement as he describes ever existed or that it contained any exculpatory or contradictory material" and as such trial counsel could not have been ineffective for raising a meritless issue. (ECF No. 7-12 at 9.) The state court could not conduct a *Brady* analysis because Petitioner did not establish that this exculpatory or impeaching material even existed. Accordingly, the PCR Court properly applied federal law in evaluating Petitioner's ineffective assistance of counsel claims with respect to Moresse Germany's purported undisclosed writing. Thus, Petitioner is not entitled to federal habeas relief on this claim.

> 3. Ground Three: Ineffective Assistance of Appellate Counsel for Failure to Raise the Issue of the Trial Court's Admission of Purported Hearsay

In Ground Three, Petitioner asserts that appellate counsel was ineffective for failing to appeal the admission of witness Ayeesha Crawford's testimony, where she repeated decedent Terrell Germany's, out-of-court statement identifying Petitioner as the assailant. (ECF No. 1 at 18-19.)

> a. Exhaustion

In their Answer, Respondents argues that Petitioner should be precluded from raising this claim because it is unexhausted. (ECF No. 7 at 37.) Petitioner first presented this claim in the PCR proceeding. (ECF No. 1 at 20.) However, upon the PCR court's denial of this claim, he did not raise this issue in the appeal of the PCR decision. (ECF No. 15 and No. 17 at 5-6.) Petitioner has therefore not exhausted this claim in state court as required by federal habeas law. *See* 28 U.S.C. § 2254(b)(1)(A).

The exhaustion requirement is not a jurisdictional requirement to the exercise of habeas corpus jurisdiction over the merits of a state prisoner's claims and a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry v. Greer*, 481 U.S. 129, 131, 135 (1987). Notwithstanding Petitioner's failure to exhaust this claim, the Court will proceed to address the substantive merits of the claim. 28 U.S.C. § 2254(b)(2); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) ("[Section 2254(b)(2) authorizes] federal courts to deny unexhausted claims on the merits." (emphasis added)).

### b.  Merits of Petitioner's Claim

Ineffective assistance of appellate counsel is judged by the *Strickland* standard. *See Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000)).

Decedent Terrell Germany's fiancé, Ayeesha Crawford, testified that she ran to Terrell immediately after he was shot. (ECF No. 7-26 at 103.) When Crawford asked Terrell, "are you okay?", Terrell replied, "Yeah. Ray shot me." (*Id.*) Prior to Crawford taking the stand, one of the investigating detectives testified that Crawford repeated Terrell Germany's statement, identifying his assailant, when she spoke with the detective. Trial counsel preemptively objected to the hearsay testimony before Crawford took the witness stand. (*Id.* at 86-88.) The trial judge agreed that it was a hearsay statement but that it qualified under the excited utterance and/or dying declaration exceptions to the prohibition on hearsay. (*Id.* at 87.)

In addressing Petitioner's ineffectiveness claim, the PCR court stated:

> The statement in question was not improperly considered a dying declaration. In fact, although the trail [sic] court stated that the statement could have fallen under the dying declaration or present sense impression exception to the hearsay rule, it was actually

admitted as an excited utterance. Petitioner makes no contention that the statement does not constitute an excited utterance and any such contention, if made, would fail. Thus, Appellate counsel cannot be deemed ineffective for failing to raise this meritless issue on appeal.

(ECF No. 7-12 at 11.)

Petitioner argues that the trial court's admission of Terrell Germany's statement violates the Confrontation Clause of the Sixth Amendment. (ECF No. 1 at 41.) The standard for determining Confrontation Clause violations in criminal trial proceedings was outlined in the United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court held that the prosecution could not use the police statement of a wife against her defendant husband at trial, where the wife was unavailable as a witness due to the spousal privilege. Admission of the statement violated the Confrontation Clause. *Id.* at 68-69.

Here, the statement at issue fits squarely within the excited utterance exception to the hearsay law. *See* Fed. Rule Evid. 803(2). This rule allows the use of statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* The declarant, Terrell Germany, who was lying in his fiancé's lap mere seconds after he was shot, identified his assailant in response to her questioning him about whether he was okay. Assuming *arguendo* that Germany made that same statement to police officers instead of his civilian fiancée, it would still arguably be considered non-testimonial. *Michigan v. Bryant*, 562 U.S. 344, 368 (2011) ("[d]uring an ongoing emergency, a victim is most likely to want the threat to her and to other potential victims to end, but that does not necessarily mean that the victim wants or envisions prosecution of the assailant."))

Petitioner argues that he received ineffective assistance of appellate counsel because the attorney that represented him at the direct appeal stage failed to raise the trial court's erroneous

admission of the purported hearsay. However, Petitioner has failed to meet the first *Strickland* prong, showing that his appellate counsel's failure to raise the hearsay admission "fell outside the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Trial counsel's objection to the statement and the subsequent sidebar discussion provided a robust record for direct appeal counsel to analyze. After reviewing the trial court's basis for admitting the contested statement, appellate counsel may have deemed it an unmeritorious argument to raise before the Appellate Division. Moreover, appellate counsel may have considered the unlikelihood of satisfying *Strickland's* prejudice prong even if he did raise this claim.

Therefore, appellate counsel cannot be deemed ineffective for failing to raise an issue that would not have resulted in the reversal of his client's conviction. *See Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999).

> 4. Ground Four: Ineffective Assistance of Appellate Counsel for Failure to Raise the Trial Court's Admission of Prejudicial Evidence

In Ground Four, Petitioner asserts that appellate counsel was ineffective for failing to appeal the improper admission of a crime scene photograph from an unrelated case. (ECF No. 1 at 43-44.) It is noteworthy to mention that this claim is the most extensively-litigated claim in this petition.

By way of background, this claim stems from the trial prosecutor's decision to affix a crime scene photograph to one side of a previously used poster board. (ECF No. 7-25 at 6.) The other side of the poster board had a sketch depicting a crime scene from an unrelated homicide. (*Id.* at 6.) Upon showing this evidence to defense counsel before the start of witness Moresse Germany's testimony, defense counsel indicated that there was an unrelated homicide sketch on the back of the poster board. (*Id.*) The prosecutor tried to remove the unrelated image without doing damage

to the entire poster board. (*Id.*) The trial resumed before the prosecutor could successfully remove the unrelated image, therefore prompting the prosecutor to make sure that the jury could not see the backside of the poster board in question as she was examining the witness about the photograph's contents. (*Id.* at 7.) The relevant image was admitted into evidence as S-47A over defense objection. (*Id.*)

Petitioner first raised this claim in the PCR proceeding.[2] (ECF No. 7-12 at 3.) Petitioner's appeal of the PCR denial resulted in a partial remand by the Appellate Division on the basis of this particular claim. (ECF No. 7-17 at 19-22, 26.) The Appellate Division determined that the record was devoid of any factual finding to support that appellate counsel's performance was not deficient. (ECF No. 7-17 at 22.) As a result, an evidentiary hearing was conducted before the trial court. The assistant prosecutor who tried the case, served as the sole witness called to testify at the evidentiary hearing. (ECF No. at 7-22 9 and No. 7-35.) She testified that upon realizing that the photograph from the unrelated homicide was on the back of the poster, she decided to physically hold the poster board up for the jury panel to see, rather than publishing the exhibit and allowing the jury to physically handle the evidence. (ECF No. 7-35 at 7.) Additionally, she testified that the unrelated image was removed from the poster board before the evidence was submitted to the jury for deliberation and that defense counsel acknowledged this correction on the record. (*Id.* at 7-8, 16.) Upon the close of the state's case at the evidentiary hearing, the defense proffered that the trial defense counsel's testimony would be necessary to corroborate Petitioner's claims. (*Id.* at 16-17.) The judge denied PCR counsel's request for an adjournment, reasoning

---

[2] It should be noted that Respondents have not provided the portion of Petitioner's post-conviction relief filing where this particular claim was raised.

that PCR counsel had sufficient time to arrange for potential witnesses to make themselves available for the evidentiary hearing. (*Id.* at 17.)

The PCR Court once again denied Petitioner's application for relief after it made several findings of fact. (*Id.* at 18-19.) Among other things, it found that the unrelated homicide image was never viewed by the jury and that the image was eventually removed by the prosecution before the evidence was sent to the jury room. (*Id.* at 18.)

Petitioner appealed the PCR denial, asserting that the evidence presented at the evidentiary hearing supported his ineffective assistance of appellate counsel claim and that remand is appropriate so that he can call his trial attorney to testify. (ECF No. 7-20 at 15-29 and 7-22 at 8.) The Appellate Division disagreed with Petitioner's arguments, determining that the evidentiary hearing established "that the jury did not see the irrelevant sketch" and as such rendered his ineffective assistance of counsel claim unmeritorious because he cannot meet *Strickland's* second requirement that petitioner demonstrates that the deficient performance was prejudicial. (ECF No. 7-22 at 11.)

Here, the Court agrees that even assuming appellate counsel was ineffective for failing to raise the issue, Petitioner cannot show that he was prejudiced in light of the fact that the jury did not view the unrelated image. As such, Petitioner fails to show that the state court unreasonably applied *Strickland* or that the denial of this claim was the result of an unreasonable determination of the facts. The Court will therefore deny habeas relief on this ground.

5. Ground Five: Ineffective Assistance of Appellate Counsel for Failure to Challenge the Sentence

In Ground Five, Petitioner alleges that appellate counsel's failure to challenge his sentence enhancement resulted in his ineligibility to potentially obtain relief vis-à-vis the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).

Petitioner first challenged the illegality of his sentence in his *pro se* PCR petition filed on June 30, 2005. (ECF No. 7-11.) While Petitioner did not formulate any arguments about why the sentence was illegal, he attached a law journal article that addressed the then-recent *Blakely* decision. (*Id.* at 9.) Petitioner's direct appeal was decided on October 15, 2004, four months after the United States Supreme Court issued its *Blakely* decision. Petitioner now contends that he alerted his appellate counsel of the *Blakely* decision and requested that counsel file supplementary arguments to his then-pending direct appeal, in the wake of the new law. (ECF No. 1 at 45). Appellate counsel advised that he "would raise the claim on PCR as an illegal sentence motion[3]." (*Id.*)

In *Blakely*, the United States Supreme Court held that the state trial court's imposition of a sentence enhancement that resulted in a sentence significantly over the statutory maximum without a jury fact-finding is in violation of the defendant's Sixth Amendment right. *See Blakely*, 542 U.S. at 303, 308, 314-15. In the wake of the *Blakeley* decision, the Supreme Court of New Jersey modified New Jersey's Code of Criminal Justice's scheme of presumptive sentencing by holding that "a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction" constituted a Sixth Amendment

---

[3] Petitioner attached the referenced correspondence to his PCR application. (ECF No. 7-11 at 47-49.) It is unclear from those letters whether appellate counsel was alerted to the *Blakely* decision before or after Petitioner's conviction was affirmed on direct appeal.

violation. *State v. Natale*, 184 N.J. 458, 466 (2005). This decision also compelled the Court to eliminate presumptive statutory terms. *Id.* at 487. The *Natale* court's holding was a balancing act in which the state complied with the *Blakely* decision while also maintaining the integrity of the New Jersey Code. *Id.* at 489.

At the time of Petitioner's sentencing, state law permitted the "sentencing court the limited power to depart from the presumptive terms in *N.J.S.A.* 2C:44-1(f)(1) if it found a preponderance of aggravating or mitigating factors. *Natale*, 184 N.J. at 484 (citations omitted). The sentencing court here did not give any indication that it was considering the presumptive term, but even assuming for argument's sake that it was, Petitioner has not established how the new rule would have lowered his sentence. Petitioner, who was convicted of two second degree offenses, faced a statutory sentencing range of five to ten years on each of those counts, *N.J.S.A.* 2C:43-6(a)(2), and a presumptive range of seven years. *N.J.S.A.* 2C:44-1(f)(1)(C). However, the sentencing court found five aggravating factors, one of which was based on a prior criminal conviction for a violent offense, and no mitigating factors, before it sentenced Petitioner at the highest end of the sentencing range. (ECF No. 7-33 at 23-25.)

The PCR Court found that Petitioner did not show that his sentence would have been lowered had appellate counsel raised the issue on direct appeal in light of the sentencing court's findings of several aggravating factors and a lack of mitigating factors. (ECF No. 7-12 at 13.) Furthermore, the PCR Court hypothesized what effect a resentencing pursuant to *Natale* would have had on Petitioner's sentence- none. (ECF No. 7-12 at 13.) The Appellate Division agreed with the PCR Court's supposition. (ECF No. 7-17 at 18.)

> Due to the manner in which the trial judge addressed this claim of ineffective assistance, defendant was afforded that relief as well. The judge found: "[R]e-sentencing [pursuant to *Natale* and without reference to the former presumptive sentence] would not have

resulted in any substantive change to the Petitioner's sentence." From our review of the transcript of the initial sentencing proceeding, the record supports the judge's assessment. There is no indication that the trial judge gave any consideration to the presumptive sentences when he sentenced defendant in the first instance. Accordingly, defendant cannot establish prejudice within the meaning of *Strickland*.

*Id.*

The state courts essentially concluded that Petitioner had not established a claim for ineffective assistance of his appellate counsel because he had not demonstrated prejudice. Specifically, the state courts found that the arguments Petitioner raised in his PCR proceeding lacked merit and therefore would not have succeeded if his appellate counsel had raised them on direct appeal. As such, Petitioner could not establish a reasonable probability that the outcome of his appeal would have been different but for this supposed deficient performance by appellate counsel. This Court finds that the state court's decision was not an unreasonable application of *Strickland's* prejudice prong. Thus, Petitioner is not entitled to habeas relief on this claim.

Accordingly, all of Petitioner's claims of ineffective assistance of trial/appellate counsel are denied.

B.    Prosecutorial Misconduct

Finally, Petitioner alleges that prosecutorial misconduct during direct examination of witness Ayeesha Crawford was in violation of his right to fair trial and due process. Petitioner first raised this claim on direct appeal. (ECF No. 1 at 37.)

Petitioner contends that the prosecutor deliberately elicited the improper testimony and failed to take "the requisite steps to ensure that his witnesses did not refer to 'mug shots'[4], or any

---

[4] Petitioner argues that Crawford initially referred to the photographs as "mug shots" and further along in her testimony, described them as photographs of "people that commit crimes." The trial transcript does not contain any testimony where Crawford used the phrase "mug shots." For that matter, the entire colloquy that Petitioner cites on page 14 of his petition is not in the trial

prior indications of arrest. (*Id.*) He argues that the witness's testimony was prejudicial in that it suggests that Petitioner had been arrested before and was predisposed to commit the crime as charged. The Appellate Division noted that the reference was used once, in a "fleeting" manner and had very little potential to impact the jury's decision. (ECF No. 7-9 at 21.)

On direct examination, witness Ayeesha Crawford, testified about an out of court identification she made of the Petitioner. (ECF No. 7-26 at 117-118.) When asked to describe the identification process, the following colloquy ensued:

Q: Now did there come a time while you were at headquarters either before or after giving the statement that you looked at some photographs?

A: Yes.

Q: Do you recall how those were presented to you?

A: Yes, it was a cardboard like six pictures on it.

Q: When you viewed those photographs, the photographs that were on there, what did the photograph depict? What kind of people did it [depict?][5]

A: There were pictures of, I guess [people that commit] crimes, I guess.

Q: Well, what did they look like?

MR. FERRANTE: I object to that. I ask that it be stricken.

(ECF No. 7-26 at 117-118.)

Shortly after this objection, the trial judge gave a thorough limiting instruction that included the following information:

_____

transcript that was filed with the Court. (See ECF No. 1 at 37.)
[5] The portion of the trial testimony from half of the word "depict" until "crimes" on the next line, is partially illegible in the transcript that was submitted to the Court. As both parties have cited to this testimony, the Court will accept their submissions of what the illegible text entailed.

> The photographs are not evidence that the defendant has ever been arrested or convicted of any crime. Such photographs come in the hands of law enforcement from any variety of reasons including but not limited to driver's license applications, passports, A.B.C. identification cards, various forms of Government employment, private employment requiring state regulation including but not limited to casino license applications, security guard applications, et cetera, or from a variety of other sources completely unconnected with criminal activity.

(ECF No. 7-26 at 120.)

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Furthermore, a prosecutorial misconduct analysis requires particular attention to be paid to "the fairness of trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Here, the prosecutor asked the witness a series of questions in order to lay a foundation, before introducing the photo array into evidence. The witness did not seem to understand how exactly to describe the photographs, thus describing them in the objectionable manner that she did. Rather than suggesting that the prosecutor was attempting to elicit improper testimony, it appears from the line of questioning following the objection, that the prosecutor was attempting to show that the identification procedure was lawful and not suggestive in any way. (ECF No. 7-26 at 118, 120-121.)

The state court determined that the witness's statements did not so infect the trial to prejudice the defendant from receiving a fair trial. The state court's denial of this claim was not an unreasonable application of clearly established federal law. First, as the Appellate Division pointed out, the comment was made once and followed up by a series of questions that illuminated what the prosecutor's objective in asking these questions was. Furthermore, as noted by the

Appellate Division, the jury was given a substantial limiting instruction almost immediately after this problematic testimony was given. The jury is presumed to have followed the instructions given to it by the trial judge. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Accordingly, under such circumstances, the Court finds that petitioner is not entitled to habeas relief on this prosecutorial misconduct claim.

## V.     CONCLUSION

For the reasons discussed above, Petitioner's habeas petition is denied.

## VI.     CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certificate of appealability.

An appropriate order follows.

Dated _____, 2018

_____
MADELINE COX ARLEO
United States District Judge